CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED
FEB 23 2011
JULIA C DUDLEY, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| ADRIENNE L. ADAMS, for Gene B. Clark, Jr., | ) ) ) | CASE NO. 4:10CV00033 |
| Plaintiff, | ) ) | REPORT AND RECOMMENDATION |
| v. | ) ) ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | By: B. Waugh Crigler U. S. Magistrate Judge |
| Defendant. | ) | |

This *pro se* challenge to the Commissioner's final decision adopting the Administrative Law Judge's September 1, 2009 decision to deny plaintiff's claim for Supplemental Security Income ("SSI") benefits (child's disability), is before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B), to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand the case for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision and DISMISSING this action from the docket of the court.

In a decision eventually adopted as the Commissioner's final decision, an Administrative Law Judge ("Law Judge") found that plaintiff's child, Gene B. Clark, Jr. ("Gene"), was a school-age[1] child on the date of his application, November 2, 2006. (R. 17.) The Law Judge further found that Gene had not engaged in substantial gainful activity at any relevant time, and that his

---

[1] Plaintiff was born on July 28, 1998. (R. 17.) Under the regulations, the term "school-age" child refers to a child age six to the attainment of age twelve. 20 C.F.R. § 416.926a(h)(2)(iv).

attention deficit hyperactivity disorder (ADHD) and seizures were impairments. (*Id.*) The Law Judge opined that these impairments caused no more than minimal functional limitations; thus, he concluded Gene did not have an impairment or combination of impairments that is severe. (*Id.*) Though the Law Judge found that Gene's medically determinable impairments reasonably could be expected to produce some of the alleged symptoms, he concluded that the statements concerning the intensity, persistence and limiting effects of Gene's symptoms were "not entirely credible." (R. 18.) The Law Judge ultimately found that Gene had not been disabled since November 2, 2006[2], the date his application for SSI benefits was filed. (R. 20.)

The Law Judge's September 1, 2009 decision was appealed to the Appeals Council. (R. 1-3.) The Appeals Council found no basis in the record or in the reasons advanced on appeal to review the decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1.) This action ensued.

A child is disabled under the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). A three-step sequential evaluation is undertaken to determine disability for children: First, the Law Judge must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(a). If the child is engaged in substantial gainful activity, he or she is found not disabled. *Id.* If the child is not, the second inquiry is whether the child has an impairment or combination of impairments which is "severe." *Id.* § 416.924(a) and (c). If a severe impairment is present, the third and final inquiry is whether such impairment meets or equals any of the impairments

---

[2] SSI is not payable prior to the month after the application was filed. *See* 20 C.F.R. § 416.335.

listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 416.924(d). To meet or medically equal a listing, a child's impairment(s) must equal the severity of a set of criteria for an individual listing impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* If the child's impairment meets or medically or functionally equals the requirements of Appendix 1, the claimant is found disabled and is awarded benefits. *Id.* If it does not, the claimant is found not disabled. *Id.* § 416.924(d)(2).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

In a letter brief, plaintiff argues that Gene needs disability benefits because he has "very bad" ADHD, and he takes medication for the ADHD, depression, and insomnia. (Pl's December 6, 2010 brief, pp. 1-2; Pl's February 1, 2011 brief, p. 1.)[3] Plaintiff further argues that Gene's behavior is so bad that she fears he will hurt someone, and his behavior is only getting worse as he gets older. (Pl's December 6, 2010 brief, p. 3.) Finally, plaintiff notes that Gene has been diagnosed with bipolar disorder, and she believes this helps to explain his irrational behavior. (Pl's December 6, 2010 brief, p. 4; Pl's February 1, 2011 brief, p. 2.)

---

[3] Plaintiff's December 6, 2010 and February 1, 2011 letter briefs are not paginated. For ease of reference, the undersigned has assigned page numbers to the documents.

3

At the second step in the sequential evaluation, the Law Judge's analysis ended when he found that Gene's ADHD and seizures were not severe impairments. (R. 17.) An impairment is not severe if it constitutes only a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. 416.924(c). Substantial evidence supports the Law Judge's finding that Gene's impairments were not severe.

As noted by the Law Judge, the only evidence which supports a finding that Gene is disabled comes from his treating psychiatrist, Richard L. Claytor, Jr., M.D. (R. 20.) Dr. Claytor evaluated Gene for the first time on October 17, 2006. (R. 241-243.) At that time, the psychiatrist diagnosed plaintiff as suffering with ADHD, by history, and "rule out depression not otherwise specified." (R. 243.) Dr. Claytor opined that Gene's global assessment of functioning ("GAF")[4] was 60[5]. (*Id.*) Dr. Claytor treated Gene on a regular basis for several years. Then on November 17, 2008, he completed a checklist Childhood Disability Evaluation Form in which he opined that Gene had marked[6] limitations in his ability to function in the following areas: concentration, persistence or pace; cognitive/communicative; motor; social; and personal. (R. 283.) The Law Judge concluded that Dr. Claytor's November 17, 2008 opinion was not well supported by the medically acceptable clinical and laboratory techniques, and that his opinion was inconsistent with the other substantial evidence of record. (R. 20.)

The Law Judge determined that the statements from Gene's teacher Cynthia Daniel were entitled to "great weight" as non-medical sources of evidence. (*Id.*) Daniel completed the first

---

[4] GAF ratings are subjective determinations based on a scale of zero to one hundred of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ("DSM-IV Manual").
[5] A GAF of 60 indicates "moderate" symptoms or difficulties. *Id.* at 34.
[6] The form defines "marked" as "a limitation that interferes seriously with the child's functioning." (R. 284.)

4

questionnaire on December 18, 2006. (R. 163-170.) At that time, she noted that plaintiff's reading, math and written language were all on a second grade level. (R. 163.) The teacher further noted that plaintiff received special education services on an as needed basis, and that the services were rarely needed. (*Id.*) Daniel opined that plaintiff experienced no problems and appeared to be age-appropriate in the following domains: acquiring and using information; attending and completing tasks; interacting and relating with others; and caring for himself. (R. 164-166, 168.) Finally, she noted that plaintiff's behavior changed after taking his medication as he became "focused and settled." (R. 169.)

Daniel completed a second questionnaire on May 10, 2007. (R. 184-191.) She noted that plaintiff was reading at a third grade level, his written language skills were at a second grade level, and his math skills were at a second to third grade level. (R. 184.) Daniel once again opined that Gene experienced no problems and appeared to be age-appropriate in the following domains: acquiring and using information; attending and completing tasks; interacting and relating with others; and caring for himself. (R. 185-187, 189.) She reported that Gene frequently missed school, and the reasons for his absences were unclear. (R. 190.) Specifically, Daniel noted that while Gene's mother reported that he was missing school because of appointments and illnesses, Gene reported that he was absent primarily because no one was getting him up for school. (*Id.*) Daniel again noted that Gene's ability to function changed after he took his medication, which caused him to become more focused and talk less without a specific purpose for talking. (*Id.*) Finally, Daniel noted that Gene had scored so high on an aptitude test that he was eligible for gifted and talented classes during the next school year. (R. 191.)

On December 7, 2005, plaintiff underwent a neurologic consultation by Victor Owusu-Yaw, M.D., a physician with Danville Neurology Associates, Inc. (R. 210-211.) The neurologist noted that plaintiff had experienced headaches on a weekly basis following an auto accident, but his headaches were effectively relieved with Tylenol and Motrin. (R. 210.) Dr. Owusu-Yaw performed an electroencephalogram ("EEG") on plaintiff which revealed no evidence of asymmetries or epileptiform activity. (R. 213.)

Plaintiff completed a Seizure Disorder Questionnaire on December 13, 2007. (R. 192-193.) She noted that Gene's seizures started after he was involved in a school bus accident and that his seizure disorder was being following at Danville Neurology Associates, Inc. (*Id.*) Interestingly, Gene's mother stated that his seizure disorder did not require medication. (R. 192.)

Gene underwent counseling therapy from September 18, 2008 through May 26, 2009. (R. 305.) He was referred to counseling in order to address the following: his difficulty staying on task and staying focused; his ability to appropriately respond in a positive manner to authority figures when being given directions; his anger management issues; his arguing and fighting with his siblings and peers; his failing to listen to adults; and his defiant behavior towards adults. (*Id.*) On May 26, 2009, therapy was terminated when plaintiff reported that Gene had met his goals and was doing much better at home, school, and in the community. (*Id.*)

Robert L. Muller, Ph.D., a licensed clinical psychologist, served as a medical expert and testified at the supplemental hearing held before the Law Judge on June 3, 2009. (R. 27-39.) Dr. Muller testified that Gene's ADHD was well-documented, and that the record also revealed depression, neither of which were not severe enough to meet or equal any of the listings. (R. 31.) Dr. Muller opined that plaintiff's limitations were less than marked in the following domains:

acquiring and using information; attending and completing tasks; interacting and relating with others; and caring for himself. (R. 31-32.) He further opined that no limitations were reflected in Gene's health and physical well being. (R. 32.)

State agency medical consultants David Niemeier and Stuart Solomon, M.D. evaluated Gene's medical records on April 4, 2007. (R. 246-252.) They noted that Gene had ADHD and seizures, which they considered not to be severe. (R. 246.) Specifically, they concluded these conditions created no more than minimal functional limitations. (*Id.*) These findings were affirmed by State agency physician Martin Cader, M.D. and State agency medical consultant Stephen Saxby. (R. 260-261.)

For all these reasons, substantial evidence supports the Law Judge's finding that Gene's ADHD and seizures were not severe impairments. Thus, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is directed to transmit a copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

2/23/2011
Date